**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2022 MAY -9 PM 12: 47

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLERK

Civil Division
Case No.

MICHAEL LAWRENCE,

     Plaintiff,

v.

BONAVENTURE OF CASTLE ROCK,

     Defendants.

---

## PETITION FOR DECLARATORY JUDGMENT AND COMPLAINT FOR RELIEF

---

1. The plaintiff is a natural person living at 8330 E Quincy Ave, Apt H209, in the city and county of Denver, in the state of Colorado.

2. The defendant is a senior living facility operating at 1855 Low Meadow Blvd., Castle Rock, Colorado, 80109.

3. The conduct complained of herein occurred in the state of Colorado, making venue proper in this Court.

4. On or about Tuesday, October 27, 2020, the plaintiff had an interview with the chef of the defendant, Bonaventure of Castle Rock, for a line cook's position. The interview went well, and at the conclusion the plaintiff met with the executive director of the defendant senior living facility. That meeting went well also.

5. Pursuant to the parties' agreement at the end of the interview, the plaintiff returned to the defendant senior living facility the next day, on Wednesday, October 28, 2020, to do a working interview, known as a stage. The stage went well and at the end of it, the defendant's chef offered the plaintiff a job, contingent upon passing a criminal background check.

6. The plaintiff accepted the defendant's offer of a job and agreed to undergo a criminal background check.

7. The next day, on or about Thursday, October 29, 2020, the defendant's chef telephoned the plaintiff, informing him that the criminal background check had turned up a matter that disqualified the plaintiff from employment with the defendant.

1

8.  The defendant refused to hire the plaintiff because of the only criminal conviction on his record—a forgery conviction from July 2, 2010—more than ten years before the defendant's refusal to hire the plaintiff.

9.  The defendant's chef contacted the plaintiff, informing him of the denial of employment immediately upon the defendant's receipt of the plaintiff's criminal background check result. The timing of the contact makes that clear.

10.  The defendant relied on nothing more than a ten-year-old conviction to deny employment to the plaintiff.

11.  After the plaintiff complained to the Equal Employment Opportunity Commission about the defendant's conduct, the defendant explained its actions. The defendant said it found the plaintiff's criminal record disqualified him from employment. A copy of the defendant's December 22, 2021 response justifying its conduct is attached hereto and identified as Exhibit 1.

12.  The defendant relied on nothing more than the plaintiff's old criminal convictions as the basis to deny employment.

13.  In the defendant's December 22, 2021 communication with the EEOC, the defendant attempted to provide legal justification for its actions. **Its legal justification shows not that it acted properly, but that it acted improperly, ignorant of the law that actually governed their hiring decision.**

14.  The defendant recited a reliance on C.R.S. § 25-27-104(2)(g) for the general proposition that it has a duty to hire only people of good character. The defendant relied on 6 C.C.R. 1011-1, Chap. VII, Sect. 1.104(3)(d) for its duty to conduct a criminal background check on prospective employees. (See Exhibit 1).

15.  As the plaintiff noted to the EEOC in a letter dated March 18, 2022, attached hereto and identified as Exhibit 2, the defendant's conduct regarding the criminal background check was deficient as a matter of law.

16.  The main deficiency in the defendant's explanation of its response to discovering that the plaintiff had been convicted of a crime many years ago was its failure to know or to apply the proper test in its response to the criminal background check.

17.  The test the defendant Bonaventure should have used is found in 6 CCR 1011-1-07-7, whose title is "criminal history record checks" [for assisted living residence employees].

18.  According to this test, at subsection 7.3(A), the rule requires **"at a minimum"** [emphasis added] the assisted living residence <u>must</u> consider the following factors:

"1) the history of convictions;
2)  the nature and seriousness of the crime;

3) the time that has elapsed since the convictions;
4) whether there are mitigating circumstances, and
5) the nature of the position to which the individual will be assigned."

19. The defendant failed to consider any of these five factors. It is clear it failed to undertake this test because its response to the EEOC showed it was unaware of the existence of the test.

20. It is clear the defendant failed to perform this test because of the speed of its rejection of the plaintiff's application for employment. Finally, it is clear the defendant failed to do this test because the only way it could have considered mitigating circumstances would have been to contact the plaintiff. The defendant failed to do that.

21. The five-part test described supra, at para. 18, is a test derived from Green v. Missouri Pacific R.R. Co., 523 F.2d 1290 (8th Cir. 1975). While the case is not controlling authority in Colorado, because it is a case from the 8th Circuit, it has become dispositive in Colorado even so.

22. The Green principles have been codified into EEOC Guidelines that are in use across the country. See, e.g., "Consideration of Arrest and Conviction Records in Employment Decisions under Title VII of the Civil Rights Act of 1964," EEOC Enforcement Guidance, No. 915.002, dated April 25, 2012.

23. The Green principles have been adopted into Colorado state law as well. This adoption is found at the statute relevant to this case, 6 CCR 1011-1-07-7.3(A), as cited supra.

24. In Green, the defendant had a hiring practice identical to the Bonaventure's practice. It rejected any applicant with a criminal record, no matter how long ago the offense occurred. The court concluded such a practice had a discriminatory effect against people of color (because they were, and still are, convicted of crime at a rate much higher than that of white people).

25. The court criticized Missouri Pacific for categorically refusing to employ people with criminal convictions. Relevantly, it noted: "[w]e cannot conceive of any business necessity that would automatically place every individual convicted of any offense, except a minor traffic offense, in the permanent ranks of the unemployed." Green v. Missouri Pacific R.R. Co., 523 F.2d 1290, 1298 (8th Cir. 1975).

26. The court continued: "[t]his is particularly true for blacks [and Hispanics, the present plaintiff adds] who have suffered and still suffer from the burdens of discrimination in our society. To deny job opportunities to these individuals because of some conduct which may be remote in time or does not significantly bear upon the particular job requirements is an **unnecessarily harsh and unjust burden**." (emphasis added). Id.

27. Bonaventure continues to engage in a hiring practice that has been illegal for fifty years now. Bonaventure characterized the plaintiff's ten-year-old offenses as "disqualifying

felonies." They were not, pursuant to the criteria the defendant was required to follow in assessing a criminal background.

28.  When a competent and knowledgeable employer conducts a criminal background check on a prospective employee, the employer does a background check that extends back for only seven years. The competent employer knows that anything occurring before that time is irrelevant. The plaintiff has undergone multiple criminal background checks and has been able to work for those employers because they knew not to look back beyond seven years.

29.  The age of an offense is relevant to considering whether a prospective employer is a risk of crime because people convicted of crime are unlikely to re-offend if they do not recidivate for a long time.

30.  The U.S. Department of Justice has untaken recidivism studies. One shows that a convicted felon is at no greater likelihood of committing a crime than someone who has never committed a crime, once he goes for seven years without recidivating. See "2018 Update on Prisoner Recidivism: A 9-Year Follow-up Period (2005-2014), p. 5, Chart 3. 2018 Update on Prisoner Recidivism: A 9-year Follow-up Period (2005-2014) (ojp.gov). Chart attached hereto and identified as Exhibit 3.

31.  Chart 3 shows a convicted felon has a 3% probability of getting arrested if he goes for seven years without recidivating. This is a slightly lower probability of getting arrested than a person from the general population has of getting arrested. In 2014, at the end of the 9-year study undertaken by the DOJ, as referenced in para. 30, a person from the general population had a 3.3% chance of getting arrested. See U.S. arrest statistics from 1990 through 2020, attached hereto and identified as Exhibit 4.

32.  By the time a convicted felon has gone nine years without recidivating, he has a less than 2% chance of getting arrested—less than a person never convicted of a crime. See Exhibit 4.

33.  So if the defendant had known anything about recidivism, it would have known that a convicted felon who had not recidivated for ten years was less likely to be arrested than a regular person. The defendant would have known not to conduct a criminal background search of more than seven years. But the defendant knew nothing about recidivism.

34.  Both blacks and Hispanics are likelier to have police contacts and criminal convictions than whites, as has been documented for the last several decades. Hispanics constitute about 20% of the population and whites just over 60% of the population. While Hispanics constitute less than 1/3 of the white population, Hispanics are convicted at just over half the rate of whites in Colorado (15,998 convictions for Hispanics, 29,427 convictions for whites). See Colorado's Community Law Enforcement Action Reporting Act, October 2020, chart 3-10, "Adult District Court Outcomes by race/ethnicity and most serious filing charge, p. 29. Summary: CY 2019 Report on the C.L.E.A.R. Act (October 2020) (state.co.us). A copy of the chart is attached hereto and identified as Exhibit 5.

35.  The defendant's conduct is facially neutral, but has a discriminatory effect on Hispanics, who are convicted of crimes at a rate disproportionately higher than whites. A permanent bar to people with felonies on their records will bar a disproportionate number of Hispanics from being able to obtain work. There is no good reason for such a bar.

36.  Plaintiff is Hispanic and thus is a member of a protected class under Title VII.

37.  Defendant's conduct is a violation of Title VII in its treatment of the information found in the plaintiff's criminal background check.

38.  Ordinarily, the Court would have to determine whether an employment practice was facially neutral but discriminatory in fact. In this instance, the case law following <u>Green</u> makes it clear this an employer's refusal to hire people with criminal records, no matter how long ago the conviction occurred, is a discriminatory policy.

39.  Ordinarily, the Court would have to consider whether a business necessity justified the employment policy at issue. Here, however, courts have already said on numerous occasions that there is no such business necessity to justify barring people permanently from work because of an old criminal record.

40.  There is no question the defendant was ignorant and incompetent in responding to the plaintiff's criminal background check.

41.  **The defendant clearly and certainly erred in the following ways:**

(a) The defendant erred in performing the background check in the first place. The regulation the defendant relied on as requiring it to perform a criminal background check on the plaintiff before hiring him (6 C.C.R. 1011-1, Chap. VII, Sect. 1.104(3)(d)) applied only to employees who would be interacting with the residents. As a cook, the plaintiff would have been walled off from the residents, never seeing them. The defendant had no need to do a background check on the plaintiff at all.

(b) In performing a criminal background check on the plaintiff, such a check should have gone back for no more than seven years. Information before that is irrelevant. A felon who has gone straight for seven years is at no more of a risk of arrest than a person who has never committed a crime.

(c)  In reviewing the information from the lifetime criminal background check that the defendant wrongly had done, the defendant failed to perform the five-part test required by 6 CCR 1011-1-07-7.3(A). Not only did the defendant fail to undertake this test, its response to the EEOC shows it was not even aware of this test or of its duty to perform it.

42.  Had the defendant performed the five-part test required of it to assess the plaintiff's criminal background record, it would have certainly concluded hiring the plaintiff was proper. All five criteria weighed in favor of hiring the plaintiff, as the plaintiff set out in Exhibit 2.

43.  As a result of the defendant's violation of the plaintiff's civil rights under Title VII, the plaintiff has suffered emotional injuries from the defendant stigmatizing the plaintiff as an irredeemable felon. The plaintiff has lost wages. Those amounts may be determined at trial.

44.  The defendant's discrimination against the plaintiff on the basis of ethnicity, depriving him of his civil rights under Title VII, is as clear as a mountain lake.

45.  Because the defendant's violation of law is clear and undisputed, the plaintiff respectfully requests that this Court immediately enter a declaratory judgment concluding that the defendant has violated the plaintiff's Title VII rights in the way it handled the criminal background check of the plaintiff in October 2020.

46.  The plaintiff requests a hearing on damages according as the Court may schedule it.

WHEREFORE, the plaintiff respectfully requests that the Court immediately enter a judgment declaring that the defendant has violated the plaintiff's civil rights under Title VII, that the Court schedule a damages hearing as soon as is practicable after entry of judgment, and for all such further relief as this Court deems just and proper.

DATED this 9th day of May, 2022

Michael Lawrence
/s/ Michael Lawrence
Michael Lawrence, plaintiff
8330 E Quincy Ave, Apt H209
Denver, CO 80237
Tel. 720-231-2023
Email: mlawrence31416@gmail.com