IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01143-WJM-KLM

MICHAEL LAWRENCE,

    Plaintiff,

v.

BONAVENTURE OF CASTLE ROCK,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss Plaintiff's Complaint** [#10][1] (the "Motion"). Plaintiff, proceeding as a pro se litigant[2], filed a Response [#16] in opposition to the Motion [#10], and Defendant filed a Reply [#17]. Pursuant to 28 U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c), the Motion [#10] has been referred to the undersigned for a recommendation regarding disposition. *See* [#11]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is

---

[1] "[#10]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court is not the pro se litigant's advocate and cannot "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). Pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#10] be **GRANTED** and that Plaintiff's Petition for Declaratory Judgment and Complaint [#1] ("Complaint") be **dismissed with prejudice**.

## I. Background[3]

This case arises out of Plaintiff's failure to be hired as a line cook by Defendant Bonaventure of Castle Rock ("Bonaventure" or "Defendant"), a senior living facility, in October 2020. *Compl.* [#1] at 1. On October 27, 2020, Plaintiff had an interview with Bonaventure's chef and a meeting with its executive director, both of which "went well." *Id.* The following day, on October 28, 2020, Plaintiff returned to Defendant's facility for a working interview, at the end of which Plaintiff was offered a job, contingent on passing a criminal background check. *Id.* On October 29, 2020, Plaintiff was informed by telephone that he could not be hired by Defendant due to a criminal conviction for forgery from July 2010, more than ten years before the events in question . *Id.* at 1-2.[4]

Plaintiff filed a charge of discrimination with the EEOC alleging a Title VII disparate impact claim based on race, and the EEOC issued a Right to Sue letter on May 2, 2022.

---

[3] For the purposes of resolving the Motion [#1-9], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[4] As to that issue, Plaintiff, a disbarred attorney, was convicted on June 2, 2010, of three felony counts: Attempting to Influence a Public Servant, Forgery, and Offering a False Instrument for Recording in the First Degree. He was sentenced to thirty days in jail and three years of probation. *Motion [#10]*, Ex. 1. This document is properly considered by the Court without converting the motion to a summary judgment motion as discussed in Section II, *infra.*

*Notice of Right to Sue.* Compl. [#1], Ex. 6. Plaintiff filed this lawsuit on May 9, 2022. *Id.* Plaintiff asserts a Title VII disparate impact claim against Defendant. *Id.* at 6. Defendant asserts that Plaintiff has failed to state a disparate impact claim under Rule 12(b)(6), and that the claim should be dismissed because Plaintiff failed to exhaust his administrative remedies with the EEOC. *Motion* [#11] at 1. Defendant further asserts that amendment of the Complaint would be futile, and that the Complaint should thus be dismissed with prejudice. *Id.*

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir.1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.,* 510 F.3d 1196, 1200 (10th Cir.2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations.") (quoting *Twombly,* 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999) (citation omitted).

The Motion [#10] attaches matter outside the pleadings. The sufficiency of a complaint must generally rest on its allegations alone. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). If matters outside the pleadings are presented to and are not excluded by the Court, a Rule 12(b)(6) motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996). There are exceptions to this rule which allow the Court to consider documents without conversion of the motion to a summary judgment motion, including the following: (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice, including matters of public record. *Gee*, 627 F.3d at 1186; *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006). Courts have broad discretion in determining whether or not to accept materials

beyond the pleadings. *Lowe v. Town of Fairland,* 143 F.3d 1378, 1381 (10th Cir. 1998).

The Court has determined that it will consider the EEOC Charge attached to the Motion (Exhibit 3), as that is central to Plaintiff's claims and is referenced in the Complaint. Furthermore, the Court finds it appropriate to consider the other documents attached to the Motion [#10], which include this Court's Order denying the reinstatement of Plaintiff (Exhibit 1), a Colorado Supreme Court Decision and Order Imposing Sanctions on Plaintiff (Exhibit 2), prior complaints filed by Plaintiff in Colorado (Exhibit 4), and a document entitled "ALR Program Guidance" regarding mandatory pre-employment criminal background checks issued by the CDPHE (Exhibit 5). A Court may take judicial notice of its own orders, administrative and agency documents, other civil lawsuits, and criminal convictions without converting a motion to dismiss to a motion for summary judgment. *Tal*, 453 F.3d at 1264 n.24; *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003); *Ingle v. Ieros, LLC,* No. 18-cv-02759-LTB, 2019 WL 2471152, at *4 (D. Colo. June 13, 2019).

### III.  Analysis

**A.     Whether Plaintiff has Stated a Plausible Title VII Disparate Impact Claim**

Title VII of the Civil Rights Act of 1964 prohibits, among other things, discrimination on the basis of race or national origin. *See* 42 U.S.C. § 2000e-2(a). Title VII recognizes two types of claims: disparate treatment and disparate impact. *Carpenter v. The Boeing Company,* 456 F.3d 1183, 1186 (10th Cir.2006). Claims of disparate impact "involve employment practices that are facially neutral in their treatment of different groups but in fact fall more harshly on one group than another and cannot be justified by business

necessity." *Int'l Board of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977). "Proof of a discriminatory motive . . . is not required under a disparate impact theory." *Id.* The premise behind this approach "is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 987 (1988).

To establish a *prima facie* case of disparate impact discrimination, a plaintiff must show "that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1242 (10th Cir.1991); *see also* 42 U.S.C. § 2000e-2(k)(1)(A)(I). A plaintiff "must point to both a significant disparate impact and to a *particular* policy or practice that caused the disparity." *Pippin v. Burlington Resources Oil and Gas,* 440 F.3d 1186, 1200 (10th Cir.2006) (emphasis in original).

Here, the Court agrees with Defendant that regardless of how Plaintiff attempts to frame his claim in the Response [#16], the claim appears to be based on Defendant's alleged failure to follow the criminal background "test" set out in 6 C.C.R 1011-1:7-7.3(A) when it rejected him for employment. *Compl.* [#1] at 2-5.[5] Plaintiff alleges that this test requires the weighing, at a minimum, of five factors relevant to the criminal offense before an employer may choose not to hire someone because of that offense. *See id.* and ¶¶ 16-20. Plaintiff alleges that had Defendant properly applied the five-part test in the regulation, "it would have certainly concluded hiring the plaintiff was proper" as "[a]ll five

---

5   This regulation was promulgated by the CDPHE.  *See Motion* [#10].

criteria weighed in favor of hiring the plaintiff." *Id.* ¶ 42.  However, Plaintiff has provided no legal authority that permits a Title VII disparate impact claim based on a failure to follow a state court regulation.  Moreover, the Court finds that any such claim should be rejected in light of the fact that there is no private right of action against an employer who fails to follow the regulation.

Thus, only the Colorado legislature may authorize private civil actions for violations of a regulation.  See *McDonald v. J.P. Morgan Chase Bank, N.A.*, No. 12-CV-02749-MSK, 2015 WL 1403419, at *4 (D. Colo. Mar. 23, 2015).  Here, the regulatory scheme and statutes regarding assisted living facilities that Plaintiff cites do not contain an express private right of action.[6]  Further, Colorado courts do not often conclude the existence of an implied private right of action that confers standing.  *City of Arvada v. Denver Health & Hosp. Auth.*, 403 P.3d 609, 613 (Colo. 2017).  To determine whether there is an implied private right of action, the Court is required to examine: (1) "whether the plaintiff is within the class of persons intended to be benefitted by the legislative enactment"; (2) "whether the legislature intended to create, albeit implicitly, a private right of action"; and (3) "whether an implied civil remedy would be consistent with the purposes of the legislative scheme." *Id.*

---

[6]  It is undisputed that Colorado's regulatory scheme for assisted living residences does not expressly provide a private right of action for alleged violations of the background check regulation relied upon by Plaintiff as the basis for his Title VII claim. Colorado's statutes for assisted living residences (C.R.S. (§ 25-27-101, *et. seq.*) do not mention criminal background checks, much less expressly provide a private cause of action.  In fact, Colorado's statutory provisions state "[t]he [CDPHE] is responsible for the enforcement of the provisions of this article and the regulations adopted thereunder."  C.R.S. § 25-27-108.

Here, the Court finds under the above factors that there is not an implied private right of action to bring suit under the statute or regulations at issue. First, the Court agrees with Defendant that Plaintiff is not within the class of persons that the Colorado legislature (or the CDPHE) intended to protect. Rather, the class of persons that the legislature meant to protect were the residents of assisted living facilities. *See, e.g.*, C.R.S. § 25-27-101 ("it is declared to be in the public interest to establish minimum standards and rules for assisted living residences in the state of Colorado . . . t*o assure the health, safety, and welfare of assisted living residents*.") (emphasis added). Second, there is no indication that the Colorado legislature intended to create a private right of action for alleged violations of the policies concerning the hiring of persons with criminal convictions. As explained previously, the statutes applicable to assisted living residences grant enforcement authority to the CDPHE. *See*, e.g., *id.;* 6 CCR 1011-1:2. This type of enforcement scheme "reflects an intention to preclude private civil remedies for alleged violations" of the CDPHE's regulations. *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 910 (Colo. 1992). Finally, a private civil action allowing Plaintiff to sue a prospective employer for a background check that fails to conform to the CDPHE's regulations is not consistent with Colorado's legislative scheme. The Colorado legislature designed the statute and granted the CDPHE the ability to issue regulations for the purpose of protecting residents, not prospective employees. *See,* e.g., 6 CCR 1011-1-07-7. Subjecting employers to private civil liability under the regulations does not further the CDPHE's interest in protected assisted living residents.

Because there is no express or implied right of action to bring suit under the regulation and statutory scheme at issue, the Court finds that Plaintiff does not have standing to pursue his claim.  *City of Arvada*, 403 P.3d at 613-14.

Plaintiff argues, however, in the Response [#16], that contrary to the allegations in the Complaint [#1], the policy he is relying on is not the violation of the regulation regarding criminal background checks but Defendant's "practice of rejecting all job applicants out-of-hand if they have anything more than a minor criminal offense on their record."  *Id.* at 8.  The Court infers that Plaintiff is claiming that Defendant had a policy similar to that in *Green v. Missouri Pacific R.R.* Co, 523 F.2d 1190 (8th Cir. 1975), whereby it rejects any claimant with a criminal record, no matter how long ago the offense occurred.  *Compl.* [#1] at 3; *see Response* [#16] at 2-3.  Plaintiff argues in his Response [#16] that he provided statistical evidence showing a discriminatory effect on members of a protected class (including Hispanics such as himself).  *Id.* at 8.  This evidence shows, according to Plaintiff, that Hispanics and people of color are convicted of crimes at a rate disproportionately higher than whites.  *Compl.* [#1] at 5.  Applying that to Bonaventure, Plaintiff avers it operates facilities nation-wide, hiring hundreds of employees per year.  *Response* [#16] at 8-9.  The statistics set out in Exhibit 5 to the Complaint [#1] "make it clear[,]" according to Plaintiff, that Defendant's "hiring practice has a significant disparate impact on all minorities who apply to work for the defendant."  *Id.*

The Court finds that the claim based on the above policy is not plausible.  The statistical evidence relied on by Plaintiff, even if accepted as true for purposes of the Motion [#10], provides no information that would allow the Court to draw the reasonable

inference that Defendant's alleged "policy" created a significant disparate impact on Hispanics or other people of color. The fact that "[b]oth blacks and Hispanics are likelier to have police contacts and criminal convictions than whites, as has been documented for the last several decades" (Complaint ¶ 34) does not plausibly show that *Bonaventure*'s policy or practice regarding hiring has a "significant disparate impact" on Hispanics applying for positions at its facilities. Plaintiff asks the Court to make an improper inference as to that issue. *See GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) (stating that "while we draw all reasonable inferences in favor of the non-moving party, 'an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the fact finder's] findings a guess or mere possibility'") (quotation and internal quotation marks omitted).

Plaintiff fails to make any non-conclusory, statistical allegations regarding the impact of any alleged policy at Bonaventure on the hiring of Hispanics, *i.e.,* that Bonaventure's alleged policy has resulted in the refusal to hire a disparate number of Hispanic workers . *See, e.g., Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650-51 (1989) ("It is such a comparison between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs that generally forms the proper basis for the initial inquiry in a disparate-impact case."). The only allegation of alleged disparate hiring is the refusal to hire Plaintiff himself. A sample size of one is insufficient to demonstrate a significant disparate impact. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1161 (10th Cir. 1991).

Plaintiff cites to *Waldon v. Cincinnati Public Sch.*, 941 F. Supp. 2d 884 (S.D. Ohio

2013) in support of his assertion that he states a prima facie case of disparate impact. *See Response* [#16] at 9. Plaintiff argues that the *Waldon* court found that the plaintiffs' claim that the defendant terminated several employees based on a criminal background check revealing they had been convicted of certain crimes (that were decades old) adequately pled disparate impact employment discrimination. *Id.*; *see Waldon*, 941 F. Supp. 2d at 886. *Waldon* is distinguishable. In that case, the defendant terminated the employment of ten individuals based on a new mandatory state law concerning background checks, and nine of the ten were African American. The Court found that the plaintiffs, two of the nine African Americans terminated, had stated a *prima facie* disparate impact claim because they showed that the practice "that was implemented allegedly had a greater impact on African–Americans than others." *Id.* at 888. Similarly, the Eighth Circuit in *Green*, another case relied on by Plaintiff, *f*ound that the plaintiff alleged a prima facie case of disparate impact discrimination because the criminal background check that was employed by the defendant resulted in a significant impact on people of color; under the policy "[t]he rejection rate for blacks [wa]s two and one-half times that of whites." *Id.*, 523 F.3d at 1295. Here, Plaintiff does not allege that any other Hispanics (or people of color) have been impacted by Bonaventure's alleged policy.[7]

---

[7] To the extent Plaintiff avers that the EEOC concluded that Plaintiff's claim falls within the protection of Title VII and issued a notice of right to sue letter on the basis of that finding (Response [#16] at 2), this argument is also rejected. The EEOC issued Plaintiff a Notice of Right to Sue *at Plaintiff's request*. *See* Compl., Ex. 6. A Notice of Right to Sue requested by a party gives a charging party the right to file a civil lawsuit, and is simply a condition precedent to the lawsuit. *See* 42 USC § 2000e-5(f)(1). It does not convey, as Plaintiff suggests, that the EEOC believes that his claim is meritorious.

Based on the foregoing, the Court recommends that Plaintiff's disparate impact claim be dismissed for failure to state a claim upon which relief can be granted.[8]

### B.     Exhaustion of Administrative Remedies

In addition, the Court recommends dismissal of the Complaint [#1] based on Plaintiff's failure to exhaust administrative remedies. Defendant argues in that regard that the Complaint should be dismissed because Plaintiff (1) failed to timely exhaust his administrative remedies with the EEOC and (2) failed to exhaust the disparate impact claim. *Motion* [#10] at 7-9. Tu

Turning to the Court's analysis, Title VII "'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (*quoting Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). As relevant here regarding the timeliness of the charge, a plaintiff is required to file a charge "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge . . . ." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (internal quotation marks omitted). While the Tenth Circuit has recently clarified that a failure to timely exhaust administrative remedies is not a jurisdictional bar, an employer may raise failure to timely exhaust as an affirmative defense, which "may be raised in a motion to dismiss when the

---

[8] Based on this finding, the Court need not address Defendant's argument that it had a business justification for not hiring Plaintiff.

grounds for the defense appear on the face of the complaint." *Cirocco v. MacMahon*, 768 F. App'x 854, 858 (10th Cir. 2019).

Here, Plaintiff alleges that Bonaventure refused to hire him on October 29, 2020. *Compl.* [#1] ¶ 7.  Plaintiff, however, did not file his Charge with the EEOC until December 6, 2021, 403 days after the alleged discriminatory action.  *See Motion* [#10], Ex. 3.  Accordingly, Plaintiff did not file his Charge within the 300-day period prescribed by statute.

Plaintiff argues, however, that the timing of the claim was not so delayed that Defendant was prejudiced in responding to the Charge, and asserts that he was delayed because of the EEOC Denver office being closed due to the pandemic and being short-staffed.  *Response* [#16] at 4.  According to Plaintiff, he did all he was supposed to do within the 300-day period, but the EEOC "failed to timely transmit" his written statement and request for signature.  *Id.* at 5.   Plaintiff thus asserts that he "substantially complied" with the 300-day period – the only thing lacking was his signature which the EEOC failed to advise him was needed.  *Id.*  The delay in the Charge had no negative effect on Defendant's ability to respond to the charge, and Plaintiff asserts that the delay was "entirely the fault of the EEOC."  *Id.* at 4-6.  Plaintiff argues that the delay should be excused, or that he did not need to exhaust administrative remedies, because (1) exhaustion of remedies would have been futile (based on the EEOC's fault as alleged by Plaintiff); and (2) there is only a question of law to be resolved – Plaintiff postured the present case as a petition for declaratory judgment precisely because there are no

questions of fact at issue, only questions of law. *Id.* at 6-7. The Court rejects Plaintiff's arguments.

First, Plaintiff cannot establish a futility exception under Title VII. Plaintiff relies on *Ass'n for Cmty. Living in Colorado v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993), to argue that exhaustion of administrative remedies is not required if it would be futile. *Response* [#16] at 6. *Romer*, however, has no applicability to Title VII, as it concerns the Individuals with Disabilities Education Act ("IDEA"). As Defendant notes, while the Tenth Circuit has recognized waiver, estoppel, and equitable tolling as legal theories sufficient in rare circumstances to excuse or toll Title VII's exhaustion requirement, *see Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1175 (10th Cir. 1998), it has not similarly recognized a futility exception under Title VII. *See, e.g., Woodward v. Salazar*, 731 F. Supp.2d 1178, 1193 (D.N.M. 2010) ("[Plaintiffs] have no support for the proposition that this judicially created futility exception applies in the Title VII context.").9

Plaintiff's "question of law" argument also does not excuse his late filing. The Tenth Circuit in *Romer* stated that this exception to the exhaustion requirement may apply "if the alleged violations raise only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important." 940 F.2d at 1044. Again, *Romer* was a case under the IDEA, and Plaintiff has cited no case applying that

---

9 Even if a futility exception could theoretically be applied here, Plaintiff complains that "the Denver EEOC office is so understaffed that it cannot perform its job properly." *Response* [#16] at 6. The Court doubts that this would constitute the type of "structural or due process concerns" that might constitute grounds for futility, *Romer*, 992 F.2d at 1044, particularly because the EEOC was able to do its job based on the Charge and issue a Notice of Right to Sue letter.

exception in a Title VII case. That is likely due to the fact that an EEOC Charge in a Title VII claim would almost always require agency expertise and the factual development of a record. Moreover, Plaintiff's assertion that there are no questions of fact, only of law, is specious. The Court cannot plausibly infer at this stage of the litigation that the Complaint [#1] involves no disputed issues of fact in regard to Plaintiff's Title VII claim. As Defendant asserts, the requirement to exhaust administrative remedies would be a nullity if a plaintiff could avoid Title VII's clear exhaustion requirements by simply stating that his allegations are true and, therefore, no questions of fact exist. *See Reply* [#17] at 3.

As Defendants further highlight, Plaintiff fails to plead equitable tolling as a basis to excuse his failure to exhaust. *Reply* [#17] at 3. Nonetheless, even if the Court were to construe Plaintiff's Response [#16] to assert such a defense, the Court finds that equitable tolling does not apply. Equitable tolling "is appropriate only where the circumstances of the case rise to the level of active deception . . . where a plaintiff is lulled into inaction by [his] past employer, state or federal agencies, or the courts." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir.1994) (internal quotation marks omitted). Plaintiff does not allege Bonaventure or the courts actively deceived him; rather, he asserts that he received bad information from the EEOC regarding his claim.[10] It is, however, Plaintiff's burden to establish that the EEOC actively misled him. *See Dumas v. Proctor*

---

[10] According to Plaintiff, the EEOC agent with whom Plaintiff spoke told him that he had stated a valid Title VII claim and that there was nothing else for him to do. *Response* [#16] at 5. Plaintiff avers that the agent erred in that assertion. The claim was not considered to be formally filed until the substance of the teleconference was reduced to writing and then signed as accurate by the claimant, which Plaintiff did not timely receive. *Id.*

*& Gamble Mfg. Co.*, 453 F. App'x 819, 821 (10th Cir. 2011) (citing *Jenkins v. Mabus*, 646 F.3d 1023, 1027-28 (8th Cir. 2011). Here, Plaintiff did not assert any allegations as to this issue in his Complaint, only in his Response [#16], and has not met his burden on this issue. *See In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss.").

Even if the Court were to accept Plaintiff's facts asserted for the first time in the Response [#16], they still fail to establish that the EEOC or its agent engaged in active deception. In fact, Plaintiff asserts that the agent simply "erred" in advising Plaintiff that there was nothing else for him to do in the July 16, 2021 teleconference. *Cf. Montoya v. Chao*, 296 F.3d 952, 958 (10th Cir. 2002) ("The 'misdirection' [plaintiff] complains about stems from the 'bureaucratic runaround' he claims to have experienced after he (1) contacted the EEOC asking for an extension of time and was referred to the Civil Rights Center, (2) was forced to leave a telephone message for the director of the Center and the message was never returned, and (3) sent a letter to the Center only to then be told that it had no authority to waive the filing deadline . . . . Given these facts, we conclude that the district court did not abuse its discretion in finding that Montoya was not actively deceived and that equitable tolling of the limitations period was not appropriate in the present case."); *see also Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997) ("should a plaintiff in Robinson's position be able to circumvent exhaustion requirements by simply asserting s/he was given erroneous telephone advice from an agency employee, equitable tolling would be converted from a remedy available only sparingly and in

extraordinary situations into one that can be readily invoked by those who have missed carefully drawn deadlines. We cannot extend the doctrine that far.").

Based on the foregoing, the Court finds that Plaintiff failed to timely file his charge, and thus did not exhaust his administrative remedies. Moreover, Plaintiff does not address or dispute Defendant's assertion that the EEOC charge did not include a disparate impact claim. *See Motion* [#10], Ex. 3. This is another basis to find that Plaintiff's claim is barred for failure to exhaust.

Thus, a plaintiff is generally barred from bringing a Title VII action based upon claims that were not part of the employee's EEOC charge. *See Simms v. Oklahoma ex. rel., Dep't of Mental Health and Substance Abuse Servs*., 165 F.3d 1321, 1326 (10th Cir. 1999). Here, the Charge states only that Plaintiff believes he was discriminated against based on his national origin (Hispanic"). *Motion* [#10], Ex .3. Plaintiff did not allege a facially neutral policy or practice, or that any such policy or practice has a disparate impact on any protected group. *See id.* Courts have found that an EEOC charge is barred if it fails to allege facts sufficient to give notice that a disparate impact claim is being alleged. *See Eyekhobhelo v. City of Colorado Springs*, No. 11-cv-00523-MSK-MEH, 2011 WL 4972655, *3 (D. Colo. Oct. 19, 2011); *Leo v. Garmin Int'l*, No. 09-cv-2139-KHV, 2009 WL 3122502, *5 (D. Kan. Sept. 24, 2009); *Tavera v. Potter*, No. 04-CV-02450-CBS-MJW, 2006 WL 1184469, *9-10 (D. Colo. May 3, 2006).

## C. Whether the Case Should Be Dismissed With or Without Prejudice

Finally, as the Court has recommended dismissal of the Complaint, it addresses Defendant's argument that the Complaint should be dismissed with prejudice and that

Plaintiff should not be granted leave to file an Amended Complaint. *See Motion* [#10] at 13-14. "Given the heightened concerns that govern *pro se* litigation, 'ordinarily the dismissal of a pro se claim should be without prejudice.'" *Gabriel v. Emergency Medical Specialists, P.C.*, No. 16-cv-00051-RBJ-CBS, 2016 WL 8310097, at *8 n. 13 (D. Colo. Nov. 1, 2016) ("citation omitted). However, dismissal *with* prejudice is appropriate where allowing the pro se plaintiff an opportunity to amend would be futile. *Garcia v. Webster*, No. 09-cv-03024-CMA-KLM, 2011 WL 109076, at *1 (D. Colo. Jan. 11, 2011); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal without prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile").

Here, even if Plaintiff could cure the deficiencies in the disparate impact claim, the Court has also recommended that the claim be dismissed for failure to exhaust administrative remedies. Because the failure to exhaust bars the claims, the Court finds that allowing leave to amend would be futile. Accordingly, it is recommended that the Complaint [#1] be dismissed with prejudice.

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendant's Motion [#10] be **GRANTED,** and that Plaintiff's Complaint [#1] be **DISMISSED WITH PREJUDICE**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: December 27, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge